46 N.Y.2d 276 (1978)
Alvord and Swift, Appellant,
v.
Stewart M. Muller Construction Company, Inc., et al., Defendants, and New York Telephone Company et al., Respondents.
Court of Appeals of the State of New York.
Argued October 19, 1978.
Decided December 21, 1978.
Arthur S. Friedman and Peter N. Wang for appellant.
Robert W. Gottlieb and Douglas N. Gordon for New York Telephone Company, respondent.
Richard T. Andrias and Andrew P. Davis for Charles S. Haines and others, respondents.
Judges JASEN, JONES and WACHTLER concur with Chief Judge BREITEL; Judge COOKE concurs in a separate opinion in which Judge GABRIELLI concurs; Judge FUCHSBERG concurs in part and dissents in part and votes to modify in a separate opinion.
*279 Chief Judge BREITEL.
Plaintiff Alvord & Swift, subcontractor on a construction project for the renovation of a New York Telephone Company facility, seeks damages due to delays incurred in the performance of its subcontract. Named as defendants were: the general contractor, Stewart M. Muller Construction Co., and Stewart M. Muller; the owner, New York Telephone; and the architects. From two separate orders at Special Term, one granting summary judgment under CPLR 3212 to New York Telephone and the other under CPLR 3211 dismissing two causes of action against the architects, plaintiff appealed to the Appellate Division. That court affirmed, and plaintiff again appeals.
The issues have been extensively treated in two opinions by Mr. Justice EDWARD J. GREENFIELD at Special Term. The only issue requiring further discussion is whether summary judgment was properly granted defendant on plaintiff's sixth cause of action, alleging that defendant New York Telephone actively interfered with performance of plaintiff's work. The issue raises two questions: first whether summary judgment may be granted to defendant where plaintiff, in its submissions, has made out a cause of action not contained in its pleadings; and second, whether a tort cause of action for interference with contractual relations is established when the only interference asserted is not intentional, but only incidental to another legitimate business purpose of the defendant.
The order of the Appellate Division should be affirmed. Modern principles of procedure do not permit an unconditional grant of summary judgment against a plaintiff who, despite defects in pleading, has in his submissions made out a cause of action. But in this case, because no facts establishing intentional interference with plaintiff's contractual relations have ever been alleged or proved, plaintiff has failed to demonstrate the existence of a triable issue of fact. Summary judgment was, therefore, properly granted (CPLR 3212).
On October 17, 1969 the contractor Muller and the owner New York Telephone contracted for improvements on a New York Telephone building. Later, plaintiff Alvord and Swift *280 subcontracted to perform the heating, ventilating, and air-conditioning work. The prime contract, between Muller and New York Telephone, provided that "[n]othing contained in the Contract Documents shall create any contractual relation between the Owner * * * and any Subcontractor". Alvord's subcontract, by its terms, incorporated the terms of the prime contract, and also provided Alvord with "the benefits of all rights, remedies and redress against the Contractor which the Contractor * * * has against the Owner". Thus, Alvord had no contractual relationship with New York Telephone; its contractual recourse was against Muller only.
Construction did not proceed on schedule, despite contractual provisions providing that time was of the essence. The project was not completed until almost three years after the originally scheduled completion date, and the delay entailed significant additional expense to plaintiff subcontractor. As a consequence, this action was brought, with plaintiff seeking damages of $847,559. The general contractor, however, because of insolvency, is apparently incapable of satisfying plaintiff's claim. Thus, various claims were interposed against the owner and the architects as well, despite the explicit language in the prime contract and the subcontract.
Plaintiff's sixth cause of action alleges, in essence, that the owner failed to supervise the project and the general contractor "with the consequence that Alvord was disrupted and delayed in the orderly and timely performance of its work under the Alvord subcontract." From the language of the complaint, this cause of action appears to be for breach of the prime contract between New York Telephone and Muller. So reading the complaint, Special Term granted summary judgment, emphasizing Alvord's lack of privity.
On appeal, however, plaintiff contends that the sixth cause of action is one for tortious interference with Alvord's performance of its contract with Muller. Since the memoranda of law submitted to Special Term are not included in the record on appeal, it is not possible with certainty to conclude that plaintiff did not argue a tort theory in support of its sixth cause of action. In any event, because this case involves summary judgment, not sufficiency of the complaint, failure to state a tort cause of action in pleadings would not be sufficient to permit unconditional summary judgment in favor of defendant, as a matter of law, if plaintiff's submissions provided evidentiary facts making out a cause of action (see, e.g., Irving Fin. Corp. v Wegener, 30 AD2d 958; *281 see, also, 4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.10).
Long before enactment of the CPLR, on motion for summary judgment courts looked beyond the pleadings to discover the nature of the case (see, e.g., Curry v Mackenzie, 239 N.Y. 267, 272). Even when deficiencies in the plaintiff's complaint have induced courts to grant summary judgment in favor of defendant, amendment of the complaint has frequently been permitted or directed, even by appellate courts (see, e.g., Potolski Int. v Hall's Boat Corp., 282 App Div 44, 48 [BERGAN, J.]; Elsfelder v Cournand, 270 App Div 162, 165; cf. Babtkis Assoc. v Tarazi Realty Corp., 34 AD2d 754, 755). It has only been the dead hand of a criticized case that influenced courts to grant summary judgment for defendant when a plaintiff's submissions, but not its pleadings, made out a cause of action (see Cohen v City Co. of N. Y., 283 N.Y. 112, 117; but see, in criticism, Shientag, Summary Judgment, pp 67-73; see, also, Diemer v Diemer, 8 N.Y.2d 206, 211-212 [FULD, J.]). With the advent of the modern principles underlying the CPLR, application of the archaic rule is no longer merited. It must be admitted, of course, that the archaic rule, although theoretically unsound, produces no pernicious harm so long as plaintiff may in a proper case be permitted to amend its complaint to allege the cause of action proved in its submissions, the applicable Statute of Limitations not barring the late amendment.
Even under the most modern principles, on any view summary judgment in this case was properly granted, not because of any defects in pleading, but because plaintiff's submission in opposition to the motion for summary judgment raised no unresolved issue of fact with respect to the purported tortious interference (see CPLR 3212, subd [b]; see, e.g., Capelin Assoc. v Globe Mfg. Corp., 34 N.Y.2d 338, 341, 343).
Intentional interference with contractual relations is, of course, recognized as a tort (see, e.g., Hornstein v Podwitz, 254 N.Y. 443, 448). But the interference must be intentional, not merely negligent or incidental to some other, lawful, purpose (see Rockaway Blvd. Wrecking & Lbr. Co. v Raylite Elec. Corp., 26 AD2d 9, 11-12, and cases cited; see, generally, Prosser, Torts [4th ed], pp 938-946, esp pp 941-942). On this view, to survive a motion for summary judgment, plaintiff was obliged to produce evidence, not just unsubstantiated allegations or assertions, that the owner intentionally and unjustifiably *282 interfered with the work to be done by the subcontractor. This plaintiff has failed to do. In fact, even on appeal plaintiff's contention, in substance, is that, because of the alleged breach of contract between owner and contractor, there was incidental interference with its work. There has never been any indication that an intentional tort was committed in the sense of an intention to harm plaintiff without economic or other lawful excuse or justification.
Of course, a property owner may often have a legal obligation not to interfere with the work of subcontractors, whether the interference be intentional or otherwise. But such an obligation would be contractual in nature, and barred in this case by the absence of privity between owner and subcontractor. Plaintiff, in reliance on Special Term's unreported opinion in a companion case, apparently contends that an owner's obligation not to interfere has been recognized "no matter what the contract" (Underhill Constr. Corp. v New York Tel. Co., Sup Ct, New York County, Sept. 9, 1976, GREENFIELD, J., pp 17-18, affd 56 AD2d 760, affd 44 N.Y.2d 666). In this context, "no matter what the contract" must be read to mean only that the obligation may be implied by law into an existing contract, whatever the express terms of the contract (see Peckham Rd. Co. v State of New York, 32 AD2d 139, 141, affd 28 N.Y.2d 734; Johnson Drake & Piper v State of New York, 29 AD2d 793, 794-795; cf. Cauldwell-Wingate Co. v State of New York, 276 N.Y. 365, 376; in all of which the litigating parties were in privity of contract). There exists, however, no tort liability to incidental beneficiaries not in privity.
In sum, plaintiff has produced no evidence in support of its sixth cause of action.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
COOKE, J. (concurring).
It is agreed that the order of the Appellate Division should be affirmed  but on the opinions of Mr. Justice EDWARD J. GREENFIELD at Special Term (see, also, Underhill Constr. Corp. v New York Tel. Co., 44 N.Y.2d 666, affg 56 AD2d 760). With respect to plaintiff's sixth cause of action, it is also agreed that summary judgment dismissing said cause was properly granted.
The majority, however, observes that said sixth cause appears to be for breach of contract and that plaintiff on appeal contends that said cause is one for tortious interference with *283 its performance of the contract (p 280). It then holds: "In any event, because this case involves summary judgment, not sufficiency of the complaint, failure to state a tort cause of action in pleadings would not be sufficient to permit unconditional summary judgment in favor of defendant, as a matter of law, if plaintiff's submissions provided evidentiary facts making out a cause of action" (p 280). It is this holding and its serious implications that cause concern. Only the CPLR and post-CPLR authorities will be cited in this discussion.
It is respectfully submitted that the majority confuses a defect or deficiency in a cause of action, as actually pleaded, with a cause which might have been asserted but was not. The distinction is crucial.
"While the pleadings are part of the record of a CPLR 3212 motion, a defective complaint or a deficient answer does not sanction an automatic grant or denial of the motion, where the entire record before the court presents facts curing the defect or supplying the deficiency" (4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.10, p 32-168; see, also, Irving Fin. Corp. v Wegener, 30 AD2d 958, 959; 6 Carmody-Wait 2d, NY Prac, Summary Judgment, § 39:13, pp 452-453). That rule applies where the facts presented are within the ambit of the cause of action or defense defectively or deficiently pleaded in the complaint or answer. More pertinent to our inquiry, however, is the basic rule that a party may not defeat a motion for summary judgment on the ground that he or she may have a good cause of action other than as alleged in that party's pleading (Lefft v Canada Life Assur. Co., 40 AD2d 641; Babtkis Assoc. v Tarazi Realty Corp., 34 AD2d 754, 755; Central State Bank v American Appraisal Co., 33 AD2d 1009, 1010, affd 28 N.Y.2d 578; 4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.10, pp 32-168 to 32-169; 6 Carmody-Wait 2d, NY Prac, Summary Judgment, § 39:13, p 455). That rule applies precisely to the instant situation and, consequently, plaintiff should in no event be permitted to defeat the right of the moving defendant, the New York Telephone Company, to summary judgment upon the pleaded cause merely by contending or even showing that plaintiff has a different and unpleaded cause of action.
Pleadings, although protected by the mandate of liberal construction (CPLR 3026), obviously serve an essential function (see, generally, Wachtell, New York Practice Under the CPLR [5th ed], p 147; see, also, CPLR 3011 to 3026, inclusive). *284 CPLR 3013, referred to variously as the "heart"[1] and "soul"[2] of the pleading requirement under the CPLR provides: "Statements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense." The basic requirement of this section is that the pleadings give adequate "`notice of the transactions * * * intended to be proved and the material elements of [the] cause of action'" (Spano v Perini Corp., 25 N.Y.2d 11, 18 [FULD, Ch. J.]; Jerry v Borden Co., 45 AD2d 344, 347 [HOPKINS, J.]; 3 Weinstein-Korn-Miller, NY Civ Prac, par 3013.03; Siegel, New York Practice, p 245; First Preliminary Report of NY Adv Comm on Practice and Procedure, 1957, p 63). The cause of action or defense is the thing of which the pleading must give notice (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3013:3, p 612). Of course, the form of the complaint and the label attached by the pleader are not to be exalted to a position of control (Van Gaasbeck v Webatuck Cent. School Dist., No. 1, 21 N.Y.2d 239, 245, 246), but the notice requirement of the statute "must be accomplished with sufficient precision and specificity to enable the court to control the case and to permit the parties to prepare for trial" (3 Weinstein-Korn-Miller, NY Civ Prac, par 3013.03, p 30-216; see Woolridge v Rosen, 35 AD2d 714; Meltzer v Klein, 29 AD2d 548). The purpose of the statute is to prevent surprise (Matter of Pittsford Gravel Corp. v Zoning Bd. of Town of Perinton, 43 AD2d 811, 812, mot for lv to app den 34 N.Y.2d 618; Foley v D'Agostino, 21 AD2d 60, 62-63) and, thus, to avoid confusion, delay and injustice.
"[I]t is still essential * * * that the pleading enable the defendant to determine the nature of the plaintiff's grievances and the relief he seeks in consequence of the alleged wrongs" (Shapolsky v Shapolsky, 22 AD2d 91). The giving of notice is the key, and the lack of it either as to the event out of which the grievance arises or as to a material element of each cause of action or defense creates prejudice and violates CPLR 3013 (Siegel, New York Practice, p 246).[3] It is conceded by the *285 majority that the complaint fails to state a tort cause of action for interference with contractual relations (pp 281-282); that is the underlying tenor of its position. Thus, at the very least, a material element of such a cause is lacking and no notice of it was furnished. That being so, in the event plaintiff had submitted on the motion evidentiary facts making out such a cause of action (see pp 279, 281-282), it would be improper for this court to deny summary judgment to the moving defendant on the theory that plaintiff possesses a tort cause of action.
FUCHSBERG, J. (concurring in part and dissenting in part).
As I see it, the motion for summary judgment should have been denied as to plaintiff's sixth cause of action and I therefore dissent from so much of the disposition of this appeal as is to the contrary. In arriving at their result, I suggest the majority and concurring opinions beg the true question here: Was it an abuse of discretion as a matter of law to grant defendant's motion on the sixth cause of action before the scheduled discovery could be conducted?
We all apparently agree that, any impressions to the contrary notwithstanding, liberal construction of pleadings is the accepted rule in New York. There is nothing "modern" about that. Our statutes have mandated it for the entire 130 years since the enactment of section 136 of the Code of Procedure of 1848 (see, e.g., Clark v Dillon, 97 N.Y. 370, 373; 3 Weinstein-Korn-Miller, NY Civ Prac, par 3026.01). Nor do I contest the correctness of looking to a plaintiff's summary judgment submission as supplementary material on which to determine whether a cause of action has been made out.
But it is inconsistent to speak of liberal construction of a litigant's papers while narrowly limiting its ability to garner the facts upon which its case must rest. That is the situation here.
This case is not complex. Defendant Muller, as general contractor engaged in the reconstruction of New York Telephone's building, awarded a subcontract to plaintiff, a mechanical contractor. Progress on the project was impeded by *286 almost endless disruptions, delays and changes of specifications to a point where the work was not completed until nearly three years beyond its scheduled date. At one point, the Telephone Company informed the subcontractors that it had assumed direct control in place of Muller. It was to recover the damages it claims the disruptions and delays imposed upon its own ability to perform that plaintiff brought this suit against Muller, New York Telephone and the latter's architects.
The sixth cause of action speaks for itself: "Telephone endeavored to take over direct supervision of the scheduling, coordination and installation of construction work with the result that rather than completing the Project with the services of a competent general contractor, Telephone actively interfered with and disrupted job progress and caused delays and damage to Alvord" (emphasis mine). By any rule of liberal pleading, this language may be read to include a connotation of intentionally tortious conduct. Certainly, in the context of the construction project out of which this suit arises and of the intimate relationship which each of the parties bore to it, the idea of surprise is alien and, moreover, was not urged by Telephone.[*] Nor is it suggested that any uncertainties were not resolvable by a bill of particulars.
To unearth the facts bearing on Telephone's role in the events at issue, plaintiff served notice to examine that defendant before trial. Telephone had served a like notice on plaintiff. However, the taking of the depositions was aborted when Telephone made its motion for summary judgment, which was granted over the plaintiff's protests that, among other things, the motion was brought so precipitously in order to cut off discovery.
CPLR 3212 (subd [f]), which presumably was not intended to be an empty exercise in legislative legerdemain, explicitly provides that: "Should it appear from affidavits submitted in opposition to the motion that facts essential to justify opposition may exist but cannot then be stated, the court may deny the motion or may order a continuance to permit affidavits to *287 be obtained or disclosure to be had and may make such other order as may be just".
Plaintiff's affidavit in opposition to the motion contained an express and timely request for such a deferment as an alternative disposition of the motion and demonstrated enough to indicate that facts to justify its suit "may exist". In making such a request it should be unnecessary at that stage to convince a court that such facts do exist. That would put the cart before the horse. Here plaintiff's affirmation was that defendant, inter alia, "hinder[ed] or imped[ed] the subcontractor from being able to work" and for a time had taken over direct control of the project. (See Peterson v Spartan Inds., 33 N.Y.2d 463; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3211:49, p 53.)
As a harsh and drastic remedy, the power to grant summary judgment should be exercised sparingly (Rotuba Extruders v Ceppos, 46 N.Y.2d 223; Andre v Pomeroy, 35 N.Y.2d 361, 364). In the present case, the need for circumspect application of the doctrine was particularly acute. The indirect nature of the relationship between the defendant, as owner, and the plaintiff, as subcontractor, created an informational barrier the piercing of which was obviously crucial. Moreover, evidence of defendant's intent  an essential element of the cause of action  was predominantly, if not exclusively, within defendant's control (see Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3211:49, p 53). To limit the availability of discovery here is to penalize the plaintiff for not knowing what he could not know before he had conducted the discovery to which he was entitled.
It is only in exceptional cases that a plaintiff's right to present his claims to a court of law should be cut off by a premature motion for summary judgment (see 4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.18, p 32-195). This was not such a case. Plaintiff's claim was by no means frivolous. Nor is it inconsequential; as the majority opinion tells us, the damages at stake come to $847,559. The plaintiff, almost concededly, was an innocent victim of the way in which that job was run on behalf of, and, as alleged without denial, by the defendant.
I would therefore hold that Special Term's refusal to exercise its power under CPLR 3212 (subd [f]) constituted an abuse of discretion as a matter of law (see Cohen and Karger, Powers of the New York Court of Appeals, § 158).
Order affirmed.
NOTES
[1] (See First Preliminary Report of NY Adv Comm on Practice and Procedure, 1957, p 63; 3 Weinstein-Korn-Miller, NY Civ Prac, par 3013.01.)
[2] (See Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3013:1, p 610.)
[3] The record indicates that the action was commenced against the New York Telephone Company on April 23, 1976. Said party contends that all alleged interferences took place prior to April, 1973  beyond the three-year period of CPLR 214 (subd 4). If said defendant had known that plaintiff's sixth cause sounded in tort rather than contract, undoubtedly it would have raised the Statute of Limitations as a defense at an appropriate time.
[*] The facts on which a Statute of Limitations defense could be premised also had to await discovery. Plaintiff's action was commenced within three years, the statutory tort limitations period, from the time work on Telephone's project was completed. Discovery would have developed the facts as to the nature and timing of Telephone's activity in the interval preceding the termination of the job.